Good morning, and may it please the Court, my name is Natalie Price, and I am counsel for Detective Alex Arnett. Can you speak a little closer to the microphone, please, Counsel? Of course. Thank you very much for letting me know, Your Honor. And if I may, please reserve five minutes for rebuttal. Detective Arnett respectfully requests that this Court reverse the District Court and enter an order, find, excuse me, find that he was entitled to qualified immunity. And the reason that he should have been granted qualified immunity below is because plaintiffs failed the Ixtas, they failed in their burden to set forth relevant Supreme Court, Ninth Circuit or a consensus of Sister Circuit Courts to show that the photo identification process used here was clearly unlawful at the time. Plaintiffs have not satisfied their burden, and it was their burden below, as the panel well knows, to overcome the presumption of qualified immunity, which they did not do below and they have not done in any additional briefing put to this Court. Counsel, let me give you a hypothetical. Let's say that the facts were that Officer Arnett actually did what he did here, but then lied to the prosecutor about what had happened and didn't disclose the facts, which might have rendered the identification overly suggestive. Would that matter to qualified immunity if those were the facts? I want to make sure that I understand the Court's question. Would it matter whether or not Detective Arnett was deceitful with the District Attorney? Yes. No, it would not, because we're not looking at Detective Arnett's communications with the District Attorney. We are looking at Detective Arnett's identification process. I'm going to give you a different hypothetical. Suppose he had done exactly what he did, and suppose it was, in fact, under a prong one of what I understand to be a two-prong standard with regard to in-court identifications, impermissibly suggestive, but suppose it was never introduced in court. Would there be a due process violation? Could there be a due process violation? Under that scenario, no, there could not be a due process. And the second part of the standard, doesn't this all have to do with what goes on in court? Is there any violation of constitutional protection for the ID itself absent its impact, its introduction in court and its impact in court? And the second prong, which only applies in court, which is, although your briefing does not clarify that, as to whether there was an independent basis of reliability. And suppose the woman, the girlfriend, when asked to understand how she knew this was the guy, said, well, I've actually known him for 20 years, of course it was the guy. Would that, would the ID, could the ID on any set of facts be a due process violation? Just the ID? It could be. It could be. How? What is the, what is the due process, how does due process affect the ID absence its use in court? I agree with Your Honor. If the ID is not introduced in court, or there is no meaningful impact, then there is no, there's no harm suffered. Well, it's not no harm, there's no due process violation, because a due process is the impact, it's the use in court of a impermissible ID. Yes. I agree totally. And there's a case law that says that. So why are we talking then about the details of the ID by itself? I mean, the details are relevant when we look at whether or not plaintiffs have identified sufficiently analogous precedent in order to figure out whether or not they've overcome. But the precedent was all in, on either side, were all in criminal cases in which the ID was presented in court. And to the extent. Or maybe as part of probable cause, but not just the ID itself. Is there any case that, any case that held that just the ID itself could be a due process violation? I'm not aware of any, Your Honor. So why are we getting into the weeds then of whether it's similar to this or that ID? That's relevant because that's the inquiry that we must go through to determine whether or not plaintiffs have put forth cases that show that the ID itself was clearly unlawful to time. Counsel, I don't want to speak for Judge Berzon, but the way I read the Supreme Court cases, and I'm mostly going to direct these questions to your friend, like Neil V. Biggers and Manson versus Braithwaite. The constitutional violation is the introduction into evidence of the supposedly unlawful identification. It's offered by the DA. It's admitted by the judge. That's the violation. How can the police officer be responsible for a due process violation when it is the DA that offers it and the judge that admits it? It is significantly removed. The alleged harm is significantly removed from the alleged misconduct here as to Alex Arnett. Which is why it comes down to what the police officer told the prosecutor. What we said in Stute was that if a police officer engages in unreasonable, the unreliable technique, let's assume for the moment it's clearly established that this technique was, or what happened here was clearly unreliable. If that, what we at least implied in Stute is that if the police officer is forthcoming and tells the prosecutor exactly what happened and then the prosecutor independently decides, looks at all that, independently decides to introduce it at trial, it gets used, the judge allows it, essentially there's been an intervening causation for the due process. There was a due process violation, but the intervening cause was the decision of the prosecutor. We said, you know, if the police officer does not disclose the method, then it's on the police officer. They should have, they knew it was unreliable and they essentially created the conditions for the, they caused the due process violation. Is it in the record and is it disputed or not what Officer Arnett told the prosecutor about how this idea was conducted? There is nothing in the record at all about any sort of conversations between Detective Arnett. But there is a police report and he, there is a report in which he does say that the woman was in the room at the time he. Yes, that is correct, but there is nothing in the record about any sort of other communications or interactions between Detective Arnett and the. His declaration says he gave the police report. The police report, my understanding is that he describes in detail, including the fact that the second witness was in the room. Is that any of that disputed by the plaintiffs? No, it is not. No, it is not so that there there is no dispute and there's nothing in the record and there was nothing obviously cited can't fight to nothing. And when we get down to the brass tacks here, it's the absence of any controlling precedent that would have put Detective Arnett on notice at the time that his identification process was clearly unlawful. And there's been none articulated by the plaintiff. Why isn't that in the absence of any notice to Detective Arnett that his ID process, even if unduly suggestive, is not a constitutional due process violation in and of itself? Pardon, I don't know that I heard the entirety of the question. Isn't an easier way to look at this case is whether there was any notice to Detective Arnett that his ID process, even if unduly suggestive, was itself a constitutional violation. Isn't that the easier question to answer? You assume that he had notice that it was clearly overly suggestive. I think the question is, isn't it easier to say there was no violation because of there was intervening causation? It's both. It's both. And this panel could reach reversal under either prong, either that there was no violation or even if there was a violation. What happened at trial with respect to this ID? Was it introduced as based solely on the photo array or was there independent reliability? There was significant independent reliability that was introduced to the jury trial with jurors, excuse me, at trial, which is in the record. Specifically, the victim, Mr. Cortez, consistently testified and has always identified Mr. Ixta as the shooter. He did so before the alleged identification process at issue here. I've had some trouble with the state court record, but I've looked at some of it. As far as I can tell, nothing was ever raised on direct appeal. I think there was also a state habeas case. Nothing was ever raised concerning the ID. Is that right? That is correct. I mean, your friend can correct me if I'm wrong, but I couldn't find anything in the affirmance of the conviction or at least the trial court's habeas order, which indicated that anybody challenged the ID. And to your point, Your Honor, Detective Barnett would submit that to the extent it wasn't was not raised in the trial court, but it could have been that the issue has been waived. And certainly, to the extent that there was any sort of discussion in an appellate proceeding in the state court, which the defendant is not aware of, that it's been fully vindicated at this point. And I'd like to reserve the rest for the panel. Thank you. May it please the Court, Mark Packowitz, Johnny Russell, and Paul Hoffman, on behalf of the appellees. Great question, question. This is under oath at his deposition. Detective Barnett was asked, well, who verbalized that it was number five then? Oh, I did. Question, why did you do that? Answer, I wanted to get Cortez to verbalize the number. Question, in the presence of Ms. Cervantes is when you wanted to do that, right? Answer, with Brenda Cervantes there, correct. Question, and was that how you were trained to do your job, sir? Answer, no. He was trained, and that's Volume 3, 594 to 595. Counsel, in Manson v. Braithwaite, the Supreme Court said, specifically talking about Simmons and prior cases, the Court reviewed Stovall and certain later cases where it considered the scope of due process protections against the admission of evidence derived from suggestive identification procedures. And in the seminal case of Neal v. Biggers, the Supreme Court said, we have considered citing Stovall, on four occasions, the scope of due process protection against the admission of evidence deriving from suggestive identification procedures. What case do you have that says the police officer conducting an overly suggestive identification procedure is violating any constitutional right by conducting such a suggestive ID? Every one of the cases that we've cited. Give me a name, please. Simmons. No, but the Supreme Court just said that's not what Simmons did. The Supreme Court in Neal v. Biggers and Manson v. Braithwaite, specifically citing Simmons, said, we held that the admission into evidence of the suggestive identification is what violated the defendant's constitutional rights, not the ID. I don't disagree with that, but what every court has said is, when we send an officer out on the street to do an investigation, this is the assigned detective from the violent He shows, does this interview, right, with both of them in the room intentionally in violation of his training. So he gets this piece of information. Now he can take it to the DA. All right, and then the DA, if he were doing his job, according to you, would say, well, I'm not going to use it because it's impermissibly suggestive. Or he could say, well, it's impermissibly suggestive, but I'm going to introduce it anyway, because the second standard of reliability will be met here, because the witnesses will be able to corroborate their identification. But whatever, it wasn't Arnett who decided to introduce it. No, but it was- I'm sorry? I'm sorry, I didn't mean to interrupt. Go ahead. The issue is, yes, it was the DA who decided to use it. It was the DA who got in evidence through Arnett and from this witness who obviously caused it. But the question in all of these cases is not, in all of the cases towards whether it's Chubby or it's here, let's just keep showing you the same guy. The conduit is always the police officer, and the question is whether the police officer violated the person's rights. Is there any case that has ever held that, in my hypothetical, suppose they hadn't introduced the thing at all, would that be a due process violation? I think it is. You think just doing it was a due process violation? Is there any case holding that? Is there any case holding that? Because what you've done as an officer is, let's say she wasn't going to pick number seven. So how do you deal with the Supreme Court's- She picks- How do you just deal with what the Supreme Court said in Manson? Quote, a suggestive pre-indictment identification procedure does not in itself intrude upon a constitutionally protected interest. Well, it intrudes upon the process. It intrudes upon the process because you've removed a potential exculpatory witness. Do you have any case, Supreme Court case, this is a Supreme Court case, only the Supreme Court can abrogate itself, that suggests that we can do anything, that we, notwithstanding what the Supreme Court said in Manson, say that in and by itself, regardless of what the officer told the prosecutor, regardless of what the prosecutor did at trial, in and by itself, violates the constitutional due process, right? I don't have a case that says this officer can do something that says he is civilly liable in this case if nothing happens. All right. Well, so then why don't we have a, at least a qualified immunity problem? Because what the officers know is that they, they're out there to get evidence, allegedly to prove either guilt or innocence. And when they go out and eliminate witnesses by violating a client's due process rights to gather evidence, not to have people suggested, or in this case, not even suggested, told pick number five. Counsel, are you aware that at least two of our sister circuits have specifically held that this issue doesn't fly, that the officers aren't violating 1983? In this circumstance? No, I'm not aware of those cases. Counsel, I want to deal with suit, because certainly I think if there were evidence that Officer Arnett had withheld information from the prosecutor, had not disclosed to the prosecutor the reasons for doubting the reliability of the second witness's photo ID, that there would, the officer would then be essentially responsible for the ripening of the improper ID into a due process violation. Is there any, but the record here seems to me to indicate, Officer Arnett's declaration indicates that he put this in the police report and he gave the police report to the prosecutor. Is there, do you dispute that evidence? Is there any genuine dispute about that evidence? There is. And I would. What? In the, in the SIR reply, there is, this is volume four, page 11, I'm sorry, in the SER, 1152. The prosecutor writes, and I don't care if the court, can I have permission to just say what the prosecutor wrote in her notes? We had it sealed, but I think it's important. He just threw out Brenda's ID. He said to Miguel number five, that is what she wrote. She wrote later, I'm so screwed. I'm so blanking pissed, I can't even believe him. I'm going to tell his boss, because he disclosed on the stand this information that she wanted to keep when they had talked about this. And so ER 1773 appears to be the Oxnard Police Department follow-up report. Okay. Was this, isn't the evidence that this was given to the prosecutor? I believe that report was given to the prosecutor, yes. For the trial. Yes. All right. Thank you. Can I ask a question? Yes. Procedural question. Both parties briefed this case otherwise, not the way we're asking it. Would it, would you like an opportunity to do any supplemental briefing? Is there anything you think you could, would be helpful to us? I would love to. And I would, because I'm a lawyer, I would love to do that. But I would look at the decisions that the court has cited or referenced in other circuits to address that issue. Because this is not an issue that I understood was raised at the lower court or in any of the briefings here. No, it wasn't particularly, it just sort of leaps out at one. Yeah, the, I will, I don't know whether we're going to, I don't know whether we're going to do that or not. But the two circuit cases that if we did, you might want to look at are in the Seventh Circuit, Blackman v. Jones, 132F, 4th, 522, 2025, and in the Second Circuit, Ray v. City of New York, 490F, 3rd, 189, 2007. There may well be others. Okay, I would appreciate the opportunity to address that. Because it hasn't been, it wasn't raised below, and it wasn't raised in their briefs. It maybe was somewhat peripherally raised in their briefs, but not very directly. Any other questions? Thank you. Two brief points. Can you begin by addressing the suggestion of additional briefing? You didn't argue the case the way that we're asking the questions now. That's fair, Your Honor. We did not argue it in that manner. Defendant Mr. Arnett would submit, however, that supplemental briefing is entirely unnecessary for several reasons. One of which is that this was extensively briefed in the district court. But this issue that we're now discussing wasn't briefed by anybody. It wasn't in the district court's decision either. That's correct, Your Honor. However, the issue here from Arnett's perspective is whether or not qualified immunity was properly granted under one or both prongs. And it remains the fact that plaintiffs still have not identified any controlling precedent. And due to that failure, the district court should have granted qualified immunity to Detective Arnett, that's well settled Supreme Court precedent. You're arguing there's no clear precedent that a suggestive photo ID is not clearly established to be impermissible? No. That this particular identification was not obvious to any sort of reasonable officer that it was in violation of the law. But to the questions that we have been asking, your briefs did not go to the issue of, can there even be a constitutional violation by a police officer who conducts the lineup but doesn't lie to the prosecutor and doesn't introduce it or admit it? Arnett would certainly be happy to- No, but you didn't argue that, right? Yes, I agree. Mr. Arnett did not argue that below or in this briefing. So to the extent that the panel would like supplemental briefing, we would obviously submit that. Arnett's position remains, however, that regardless of whether this court were to focus on the first inquiry or the first prong of the qualified immunity analysis or the second prong- The second prong only applies in court. I mean, that's sort of the proof of this because the whole point of the second is whether there was something that occurred at trial that overcame whatever was impermissibly suggestive about the ID. And that's the whole genesis and role of that second prong. It has nothing to do with what happened at the ID. And your brief was confused on that issue too. When I refer to the second prong, I'm referring to the second prong of the qualified immunity analysis. Oh, I see. I'm sorry. There's several prongs going around in this case. But the second prong of the ID standard is a court admission standard and you haven't addressed that. I mean, you confuse that too by treating them both as if they applied at the ID stage, which they don't. We would concede that your honor is correct, that that's accurate. It was not briefed. All right. We thank counsel for their arguments. And the case argued is submitted. And with that, we are adjourned for the day. Thank you very much. It's Services Section 10 adjourned.
judges: BERZON, BENNETT, SUNG